UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------X


In re CABLEVISION CONSUMER LITIGATION            MEMORANDUM & ORDER
                                                 10-CV-4992(JS)(AKT)



-------------------------------------X
APPEARANCES
For Plaintiffs:        Joseph Gentile, Esq.
                       Ronen Sarraf, Esq.
                       Sarraf Gentile LLP
                       One Penn Plaza, Suite 2424
                       New York, NY 10119

                       Justin M. Klein, Esq.
                       Marks & Klein LLP
                       63 Riverside Avenue
                       Red Bank, NJ 07701

                       Lee S. Shalov, Esq.
                       Ralph M. Stone, Esq.
                       Shalov Stone Bonner & Rocco LLP
                       260 Madison Avenue, 17th Floor
                       New York, NY 10016

                       Todd J. Krouner, Esq.
                       Scott Jaller Koplik, Esq.
                       Law Offices of Todd J. Krouner
                       93 North Greeley Avenue
                       Chappaqua, NY 10514

                       Carol S. Shahmoon, Esq.
                       Gregory E. Keller, Esq.
                       Chitwood Harley Harnes LLP
                       1350 Broadway, Suite 908
                       New York, NY 10018

                       Michael C. Rakower, Esq.
                       Law Office of Michael C. Rakower, P.C.
                       747 Third Avenue, 32nd Floor
                       New York, NY 10017

Richard J. Schager, Jr., Esq.
Stamell & Schager, LLP
One Liberty Plaza, 35th Floor
New York, NY 10006

For Defendants:   Thomas H. Golden, Esq.
Wilkie Farr & Gallagher
787 Seventh Avenue
New York, NY 10019

SEYBERT, District Judge:

Plaintiffs Sean Ahearn, Eric Bohm, John Brett, Angelo Brucchieri, William G. Canfield, Ralph Dudley, Arthur Finkel, Salvatore A. Gandolfo, Tina Green, Andrew Koplik, David Menoni, Theodore Pearlman, Vincent Pezzuti, Dorothy Rabsey, Martin Jay Siegel, Stanley J. Somer, and Marc Tell (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated (collectively, the "Class") sued Defendants Cablevision Systems Corporation and CSC Holdings, LLC (together, "Defendants" or "Cablevision") in a case arising out of a two-week period in 2010 during which Cablevision subscribers were not able to watch certain programming. Pending before the Court is Cablevision's motion to dismiss (Docket Entry 34). For the following reasons, this motion is GRANTED IN PART AND DENIED IN PART. The Court also makes a consolidation ruling at the conclusion of this Memorandum & Order.

<u>BACKGROUND</u>

The following discussion is drawn from Plaintiffs' allegations, which are assumed to be true for the purposes of

this motion, and from certain documents inherent in the Consolidated Amended Complaint (the "CAC"). <u>See, e.g.</u>, <u>Hutchison v. Deutsche Bank Sec. Inc.</u>, 647 F.3d 479, 481 (2d Cir. 2011).

Cablevision provides telecommunications and cable television services to more than five million households in the New York and Philadelphia broadcasting area. (CAC ¶ 16.) In certain locations, it is the only cable television provider. (<u>Id.</u>)

During the relevant times, Plaintiffs, who are divided into New York, Connecticut, and New Jersey subclasses, were Cablevision customers. Cablevision had advertised and/or promoted that it carried certain programming and networks, including WNYW ("Fox 5"), WWOR ("My9 Channel"), and the Fox Business Network (collectively, the "Fox Channels"). On October 15, 2010, however, Cablevision's agreement with News Corp., the Fox Channels' parent, expired. (<u>Id.</u> ¶ 21.) Cablevision rejected numerous proposals for a new agreement, including proposals offering the same terms and conditions as other content providers in the New York broadcasting area. (<u>Id.</u> ¶ 23.)

Two weeks later, on the eve of a National Football League game between the New York Jets and the Green Bay Packers,

Cablevision and News Corp. arrived at a new agreement and access to the Fox Channels was restored to Cablevision's subscribers. (Id. ¶ 29.)  In the interim, Cablevision's customers could not watch Fox's programming, including part of the 2010 World Series.  (See id. ¶ 31.)  Cablevision's Terms of Service recognize an obligation "to give each customer a credit for each 'known program or service interruption in excess of 24 hours,'" (id. ¶ 23 (quoting Cablevision's Agreement for iO TV)), but aside from offering a ten-dollar credit to customers who ordered World Series coverage on MLB.com or MLB.tv (id. ¶ 31), it has not offered any refund or credit to its customers who were without the Fox Channels for two weeks (id. ¶ 32).

Plaintiffs' case relies in part on the above-mentioned Terms of Service, which provide in relevant part as follows. Paragraph 4 states:

> Disruption of Service.  In no event shall Cablevision be liable for any failure or interruption of program transmissions or service resulting in part or entirely from circumstances beyond Cablevision's reasonable control. Subject to applicable law, credit will be given for qualifying outages.  In any event, if there is a known program or service interruption in excess of 24 consecutive hours (or in excess of such lesser time period pursuant to state law), Cablevision, upon prompt notification of such failure or interruption from Subscriber, will either provide Subscriber with a pro-rata credit relating to such

> failure or interruption or, at its
> discretion, in lieu of the credit provide
> alternative programming during any program
> interruption. Cablevision shall not be
> liable for any incidental or consequential
> damages.

(Def. Ex. B, Terms of Service ("TOS") ¶ 4.)[1]  Paragraph 17

states: "Programming:   All programming, program services,

program packages, number of channels, channel allocations,

broadcast channels, interactive services, e-mail, data offerings

and other Services are subject to change in accordance with

applicable law." (Id. ¶ 17.)

## DISCUSSION

Plaintiffs' Complaint asserts the following causes of

action: (1) breach of contract; (2) breach of the covenant of

good faith and fair dealing; (3) unjust enrichment; (4) consumer

fraud under New York law; (5) consumer fraud under Connecticut

law; and (6) consumer fraud under New Jersey law.  Plaintiffs

also seek an injunction preventing Cablevision from "ignoring

its contractual deadlines with content providers," and

compelling "it to enter into a dispute resolution mechanism that

---

[1] Cablevision suggests that the word "outage" in Paragraph 4
should have the same meaning as its definition under New York
law regulating cable television providers, i.e., the loss of all
channels in a given service tier. (Def. Br. 4-5.) "Outage" is
not defined in the Terms of Service, however, either explicitly
or by reference to state regulations. (See generally Def. Ex.
B.)

insures resolution of any such disputes, in the absence of a consensual agreement, so that its customers will not be deprived of programming content." (CAC ¶ 97.) The Court first recites the applicable legal standard and then considers Plaintiffs' claims in turn.

## I. Legal Standard

Defendants move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). To survive a Rule 12(b)(6) motion, a plaintiff must plead sufficient factual allegations in the complaint to "state a claim [for] relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed. 2d 929, 949 (2007). The complaint does not need "detailed factual allegations," but it demands "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. In addition, the facts pleaded in the complaint "must be enough to raise a right to relief above the speculative level." Id. Determining whether a plaintiff has met his burden is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556

U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

II. <u>Application</u>

      For the following reasons, Cablevision's motion is granted in part and denied in part.

   A. <u>Breach of Contract</u>

      Cablevision argues that Plaintiffs' breach of contract claim fails as a matter of law because the Terms of Service (1) did not obligate Cablevision to carry particular programming; (2) did not impose liability for the temporary removal of discrete channels; and (3) excused interruptions stemming from circumstances beyond Cablevision's reasonable control.

      The first argument is actually two-fold. <u>First</u>, Cablevision incorrectly suggests that Plaintiffs have not identified the contract provision that Cablevision supposedly breached. (<u>See</u> Def. Br. 9-10.) Plaintiffs allege that Cablevision breached Paragraph 4, which provides that Cablevision will offer a refund or credit or provide alternative programming in the event of a service interruption longer than 24 hours. (CAC ¶ 23.) <u>Second</u>, Cablevision argues that Paragraph 17, which provides that Cablevision's program offerings are subject to change in accordance with applicable law, relieves it of providing any particular content because federal law prohibits retransmitting a channel without the

consent of the programmer.  (Def. Br. 10.)  Paragraph 17 does
not foreclose Plaintiffs' claim because it can be fairly read as
relieving Cablevision of providing particular content only in
the event of a change in applicable law--not, as Cablevision
would have it, any time for any reason.  (See id. (arguing that
Cablevision was not obligated to provide any particular
channels).)  If Cablevision's reading of the Terms of Service is
correct, then it has not really promised to provide anything and
the contract is arguably illusory.  See Credit Suisse First
Boston v. Utrecht-Am. Fin. Co., 80 A.D.3d 485, 488-89, 915
N.Y.S.2d 531, 535 (1st Dep't 2011) (noting that interpretations
that render a contract illusory are disfavored).  More to the
point, Cablevision's reading of Paragraph 17 would arguably
render Paragraph 4 meaningless.  Taken to its logical
conclusion, Cablevision's position that it was not required to
provide particular channels would mean that it was not obligated
to provide any channels and would render useless its promise to
refund customers for service outages.  It is settled that
contracts should be interpreted in a way that avoids rendering
any of their provisions superfluous.  See, e.g., Rothenberg v.
Lincoln Farm Camp, Inc., 755 F.2d 1017, 1019 (2d Cir. 1985)
("[A]n interpretation that gives a reasonable and effective
meaning to all the terms of a contract is generally preferred to

8

one that leaves a part unreasonable or of no effect.").[2]

Cablevision's second argument, related to its first, is that Paragraph 4 does not obligate Cablevision to compensate customers for the suspension of a particular channel because this interpretation would render Paragraph 17 meaningless. (Def. Br. 11.)  But as explained already, the converse is equally true: reading Paragraph 17 in the way Cablevision urges would render Paragraph 4 meaningless.  See Rothenberg, 755 F.2d at 1019.  And the two provisions may be reconciled by the reading of Paragraph 17 that the Court suggested above.[3]

Cablevision's third argument is that any contract liability is excused by the "beyond Cablevision's reasonable control" clause in Paragraph 4.  (Def. Br. 12.)  "Force majeure

_____

[2] Tepper v. Cablevision, No. 11132/02 (N.Y. Sup. Ct. Mar. 11, 2005) aff'd, 797 N.Y.S.2d 131 (2d Dep't 2005), which held that contract language similar to Paragraph 17 precluded claims based on Cablevision's failure to televise the full schedule of New York Yankees games, is distinguishable because the Tepper court apparently did not consider contract language similar to Paragraph 4 of the Terms of Service.

[3] To be sure, Paragraphs 4 and 17 may also be reconciled in the way Cablevision suggests: The Terms of Service did not require Cablevision to provide any particular channels but did require it to refund customers for "outages" as used in state cable television regulations.  (See supra note 1.)  At this stage, though, Plaintiffs have stated a plausible entitlement for relief.  See U.S. Licensing Assocs., Inc. v. Rob Nelson Co., No. 11-CV-4517, 2011 WL 5910216, at *4 (S.D.N.Y. Nov. 28, 2011) ("Because this reading is plausible, it would be inappropriate to resolve the ambiguity in the contract at the motion to dismiss stage.").

clauses are to be interpreted in accord with their function, which is to relieve a party of liability when the parties' expectations are frustrated due to an event that is 'an extreme and unforeseeable occurrence,' that 'was beyond [the party's] control and without its fault or negligence.'" Team Mktg. USA Corp. v. Power Pact, LLC, __ N.Y.S.2d __, 2007 WL 1628420, at *3 (3d Dep't June 7, 2007) (quoting 30 Lord, Williston on Contracts § 77:31 4th ed.). They are construed narrowly and will generally only excuse a party's nonperformance if the event that caused the party's nonperformance is specifically identified. See Reade v. Stoneybrook Realty, LLC, 63 A.D.3d 433, 434, 882 N.Y.S.2d 8, 9 (1st Dep't 2009). Plaintiffs argue that force majeure clauses typically operate to excuse a party's future performance that has been rendered impossible by an unforeseen event. (See Pl. Opp. 12-13.) The Court is largely receptive to Plaintiffs' argument that a force majeure clause would not relieve Cablevision from having to refund a portion of Plaintiffs' pre-paid subscription fees pursuant to Paragraph 4. See Toledano & Pinto (Am.) v. Anasae Corp., 83 N.Y.S.2d 612, 614 (Sup. Ct. N.Y. Cnty. 1948). But even if the clause could operate that way, it would not apply in this case because it does not specifically address the circumstances that caused the service interruption--i.e., Cablevision and News Corp.'s

10

inability to reach a timely contract renewal.  See Kel Kim Corp. v. Cent. Mkts., Inc., 70 N.Y.2d 900, 902, 524 N.Y.S.2d 384, 519 N.E.2d 295, (1987) ("Ordinarily, only if the force majeure clause specifically includes the event that actually prevents a party's performance will that party be excused.").  Moreover, force majeure clauses are aimed narrowly at events that neither party could foresee or guard against in the agreement.  See id. A breakdown in the Cablevision-News Corp. negotiations was not unforeseeable, and, under Plaintiffs' reading of the Terms of Service, the parties allocated the associated risk: Plaintiffs paid their subscription fees in advance and Cablevision promised a refund in the event of a disruption.  Accordingly, the force majeure clause in this case does not preclude Plaintiffs' breach of contract claim.

B. Breach of the Covenant of Good Faith and Fair Dealing

Plaintiffs' next claim is that Defendants breached the covenant of good faith and fair dealing.  The implied covenant of good faith and fair dealing "embraces a pledge that neither party shall do anything which will have the effect of destroying or injuring the right of the other party to receive the fruits of the contract." 511 W. 232nd Owners Corp. v. Jennifer Realty Co., 98 N.Y.2d 144, 153, 746 N.Y.S.2d 131, 773 N.E.2d 496 (2002) (internal quotation marks omitted).  "While the duties of good

11

faith and fair dealing do not imply obligations inconsistent with other terms of the contractual relationship, they do encompass any promises which a reasonable person in the position of the promisee would be justified in understanding were included." Id. (internal quotation marks and citations omitted). Plaintiffs' implied covenant theory can be broken into three subparts. They allege that Cablevision (1) failed to offer the channels it advertised and then failed to provide a rebate or credit (CAC ¶ 55(a), (c)); (2) concealed that it "knew there was a distinct likelihood that it could not offer the channels it advertised" (id. ¶ 55(b)); and (3) failed to negotiate with News Corp. in good faith "despite multiple proposals being received from those third-parties to resolve the underlying dispute" (id. ¶ 55(d)).

Plaintiffs' claim must be dismissed in its entirety. The first subpart is dismissed as duplicative of Plaintiffs' breach of contract claim. E.g., Toledo Fund, LLC v. HSBC Bank USA, Nat'l Ass'n, No. 11-CV-7686, 2012 WL 364045, at *5 (S.D.N.Y. Feb. 3, 2012). The second subpart fails to state a claim because Plaintiffs have not alleged how Cablevision's allegedly concealing the upcoming expiration of the News Corp. contract deprived Plaintiffs of the fruits of their contract with Cablevision. See 511 W. 232nd Owners Corp., 98 N.Y.2d at

12

153.   The third subpart fails to state a claim because it amounts to nothing more than conclusory allegations that Cablevision failed to negotiate in good faith.   Plaintiffs allege that Cablevision rejected "multiple proposals" but allege neither Cablevision's nor News Corp.'s negotiating positions. This is insufficient to state a plausible claim.   <u>Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC</u>, No. 09-CV-0196, 2011 WL 94169, at *5 (N.D.N.Y. Jan. 11, 2011); <u>see also</u> <u>Ferguson v. Lion Holding, Inc.</u>, 478 F. Supp. 2d 455, 469 (S.D.N.Y. 2007) ("To prove a violation of the implied covenant of good faith and fair dealing, conclusory allegations of a party's failure to act in good faith alone are insufficient; specific factual allegations of a party's bad faith acts are required.").

C. <u>Unjust Enrichment</u>

Plaintiffs' unjust enrichment claim is dismissed as duplicative of their breach of contract claim.   <u>See</u> <u>Clark-Fitzpatrick, Inc. v. Long Island R.R. Co.</u>, 70 N.Y.2d 382, 388, 516 N.E.2d 190, 193, 521 N.Y.S.2d 653, 656 (1987).

D. <u>Consumer Protection Claims</u>

Plaintiffs also assert claims under the state consumer protection statutes of New York, Connecticut, and New Jersey.

1. <u>New York State Law Claims</u>

Plaintiffs' New York claims rest on General Business

Law Sections 349 and 350.  At the outset, the parties disagree whether Plaintiffs' consumer protection claims are subject to Federal Rule of Civil Procedure 9's heightened pleading standard.  Plaintiffs argue that because these claims do not sound in fraud, the heightened standard is inappropriate.  The Court agrees that, at least where the alleged conduct does not involve an affirmative misrepresentation, the normal, notice-pleading standard of Federal Rule 8 governs Plaintiffs' Section 349 claims.  See Pelman ex rel. Pelman v. McDonald's Corp., 396 F.3d 508, 511 (2d Cir. 2005) ("[B]ecause § 349 extends well beyond common-law fraud to cover a broad range of deceptive practices, and because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b) but need only meet the bare-bones notice-pleading requirements of Rule 8(a)." (internal citations omitted)); Mendez v. Bank of Am. Home Loans Servicing, LP, __ F. Supp. 2d __, 2012 WL 112506, at *16 (E.D.N.Y. Jan 14., 2012).  Cablevision's cases on this point do not compel a different conclusion.  In Ozbakir v. Scotti, for example, the court dismissed the plaintiffs' Section 349 claims without clearly determining that Rule 9 applied.  The court explained that the plaintiff's claims lacked even the baseline

14

plausibility required by Rule 8.   764 F. Supp. 2d 556, 575-76 (W.D.N.Y. 2011).

The Court need not definitively resolve this issue, though, because Plaintiffs have not stated a Section 349 claim even when viewed through Rule 8's more lenient lens.  Under this statute, "[h]armed consumers must establish (1) a 'consumer-oriented' practice that was (2) materially misleading or deceptive, and (3) that the plaintiff suffered a resulting injury." M & T Mortg. Corp. v. White, 736 F. Supp. 2d 538, 570 (E.D.N.Y. 2010); see also Ammirato v. Duraclean Int'l, Inc., 687 F. Supp. 2d 210, 221 (E.D.N.Y. 2010); Stutman v. Chem. Bank, 95 N.Y.2d 24, 29, 709 N.Y.S.2d 892, 895, 731 N.E.2d 608, 611-12 (2000).   Plaintiffs' theory has two components.  First, Plaintiffs maintain that Cablevision represented that it would carry the Fox Channels despite having reason to know that an interruption of that service was imminent.  (See CAC ¶¶ 63-64.) In their opposition brief, Plaintiffs clarify that this theory includes the idea that Cablevision failed to warn subscribers in advance that the Fox Channels would be disconnected. (Pl. Opp. 22.)  Second, Plaintiffs argue that Cablevision's billing for service in advance and later failing to credit subscribers for the disruption constituted a deceptive practice.  (Id. at 24.) The Court assumes without deciding that the alleged conduct is

"consumer-oriented" and addresses each of Plaintiffs' theories in turn.

The first theory fails because Plaintiffs do not specify any misleading affirmative advertisements or representations and because Cablevision's alleged omission was not objectively misleading.  See, e.g., Corsello v. Verizon N.Y., Inc., 77 A.D.3d 344, 365, 908 N.Y.S.2d 57, 75 (2d Dep't 2010).  Assuming it is pled with enough factual specificity, Plaintiffs' argument--that Cablevision misled its customers by failing to warn them about an upcoming service interruption--is nevertheless flawed.  This theory assumes that Cablevision's channel line-up was set in stone and that its alleged omission was tantamount to a representation that there would never be a change in service.  Under the circumstances of this case, this is the only way that the alleged deception could have caused Plaintiffs' injury: their paying for but not receiving Fox programming for two weeks.  See Strutman, 731 N.E.2d at 611-12 (listing causation as an element of Section 349 claims).  But Plaintiffs' argument is belied by the Terms of Service, which expressly contemplated service and program interruptions.  (TOS ¶ 4.)  Thus, in this case, Cablevision's alleged omission would not have misled a reasonable subscriber into believing that service interruptions never occur.  See e.g., Spagnola v. Chubb

16

Corp., 574 F.3d 64, 74 (2d Cir. 2009) ("Deceptive acts are defined objectively as acts likely to mislead a reasonable consumer acting reasonably under the circumstances." (quoting Boule v. Hutton, 328 F.3d 84, 94 (2d Cir. 2003) (internal quotation marks and brackets omitted))).

   Plaintiffs' second theory--that Cablevision's failure to provide a credit to subscribers who suffered the Fox outage was itself a deceptive practice--is also flawed because Plaintiffs cannot establish an injury flowing from the alleged deception beyond what is covered by their breach of contract claim. In contrast to Plaintiff's first theory, under which the purported injury was the loss of Fox programming, see Strutman, 731 N.E.2d at 612 (under Section 349, alleged injury need not be pecuniary), the injury under the second theory is the loss of the rebate that Plaintiffs argue they are owed under the Terms of Service. This is insufficient to state a Section 349 claim that is independent from Plaintiffs' breach of contract claim. See Spagnola, 574 F.3d at 74 ("Although a monetary loss is a sufficient injury to satisfy the requirement under § 349, that loss must be independent of the loss caused by the alleged breach of contract." (affirming dismissal of Section 349 claim)).

   Plaintiffs also allege a claim under General Business

Law Section 350, which prohibits "[f]alse advertising in the conduct of any business, trade or commerce or in the furnishing of any service." N.Y. GEN. BUS. L. § 350. The standard for Section 350 claims, which pertain specifically to false advertisements, is identical to the standard for claims under Section 349, discussed above. Denenberg v. Rosen, 71 A.D.3d 187, 194, 897 N.Y.S.2d 391, 395-96 (1st Dep't 2010) (citing Goshen v. Mut. Life Ins. Co. of N.Y., 98 N.Y.2d 314, 324 n.1, 746 N.Y.S.2d 858, 774 N.E.2d 1190 (2002)). To prevail, Plaintiffs must show "(1) the challenged transaction was 'consumer-oriented'; (2) defendant engaged in deceptive or materially misleading acts or practices; and (3) plaintiff was injured by reason of defendant's deceptive or misleading conduct." Id. Plaintiffs' Section 350 claim fails both because the CAC does not allege a deceptive or materially misleading advertisement and because of the shortcomings addressed in the discussion of their Section 349 claim.

        2. Connecticut State Law Claims

        Plaintiffs also allege a claim under Connecticut's Unfair Trade Practices Act ("CUTPA"), which prohibits "unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." CONN. GEN. STAT. § 42-110b(a). To prevail, Plaintiffs must establish that

Cablevision, "while acting in trade or commerce, engaged in unfair or deceptive acts that caused plaintiffs to suffer an ascertainable loss." Walsh v. Seaboard Sur. Co., 94 F. Supp. 2d 205, 212 (D. Conn. 2000). "Plaintiffs may establish a CUTPA violation by showing either a deceptive or unfair practice or a practice amounting to a violation of public policy." Id. A practice is deceptive if "it is a materially misleading representation, omission, or other practice that a consumer reasonably interpreted under the circumstances." Id. at 213. A practice is unfair under CUTPA "(1) if it offends public policy as it has been established by statutes, the common law or otherwise, (2) if it is immoral, unethical, oppressive or unscrupulous, or (3) if it causes substantial injury to consumers." Id. "[A]ll three criteria need not be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three." Rudel Machinery Co. v. Giddings & Lewis, Inc., 68 F. Supp. 2d 118, 129 (D. Conn. 1999) (quoting Associated Inv. Co. v. Williams Assocs. IV, 230 Conn. 148, 156, 645 A.2d 505 (1994)). Plaintiffs need not plead their CUTPA claims with particularity. Empower Health LLC v. Providence Health Solutions LLC, No. 10-CV-1163, 2011 WL 2194071, at *5 (D. Conn. June 3, 2011) (noting that CUTPA claims

19

asserted in federal court need only satisfy Rule 9 if they are based on fraud allegations).

Here, regardless of whether Cablevision's alleged conduct is styled as deceptive or unfair, Plaintiffs have not stated a CUTPA claim because their CUTPA allegations simply state a breach of contract claim in disguise. Although "[t]he same facts that establish a breach of contract claim may be sufficient to establish a CUTPA violation," not every "breach rises to the level of a CUTPA violation." Greene v. Orsini, 50 Conn. Supp. 312, 315, 926 A.2d 708, 710 (Conn. Super. 2007). "A simple breach of contract does not offend traditional notions of fairness and, standing alone, does not offend public policy so as to invoke CUTPA." Greene, 926 A.2d at 711 (applying majority view). A CUTPA claim requires more than a simple breach of contract; generally, a valid CUTPA claim depends on aggravating circumstances that amount to more than just "a failure to deliver on a promise." Id.; see also O&G Indus., Inc. v. Earth Tech., Inc., 2010 WL 625581, at *6-7 (Conn. Super. Jan. 6, 2010) (unpublished) (noting majority view); cf. United Steel, Inc. v. Haynes Constr. Co., 2006 WL 2734307, at *4 (Conn. Super. Sept. 12, 2006) (unpublished). Here, Plaintiffs have not alleged any aggravating circumstances that would give rise to a CUTPA claim independent from their breach of contract claim. Accordingly,

20

their CUTPA claim is dismissed.

       3.  <u>New Jersey State Law Claims</u>

     Plaintiffs have also failed to state a consumer fraud claim under New Jersey's Consumer Fraud Act (the "CFA").  To state a claim, Plaintiffs "must allege facts which, if proven, would establish that defendant used an 'unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale of or advertisement of any merchandise." <u>Quigley v. Esquire Deposition Servs., LLC</u>, 409 N.J. Super. 69, 77, 975 A.2d 1042, 1046-47 (N.J. Super. A.D. 2009) (quoting N.J.S.A. 56:8-2); <u>see also</u> <u>Kleinman v. Merck & Co.</u>, 417 N.J. Super. 166, 180, 8 A.3d 851, 860 (N.J. Super. L. 2009).  They must also allege a loss of money or property as a result of Cablevision's wrongful conduct.  <u>Quigley</u>, 975 A.2d at 1046-47.  Where, as here, a plaintiff alleges a wrongful omission, "the plaintiff must show that the defendant acted with knowledge, and intent <u>is</u> an essential element of the fraud." <u>Cox v. Sears Roebuck & Co.</u>, 138 N.J. 2, 18, 647 A.2d 454, 462 (1994).  Plaintiffs have not alleged that Cablevision intended to mislead its customers by not timely advising them of the

impending service change, and thus their omission-based claim fails.[4]   Plaintiffs' claim that Cablevision deceived its customers by failing to provide the rebate that was allegedly promised under the Terms of Service also fails to state a New Jersey consumer fraud claim.   Similar to CUTPA, New Jersey law requires something more than a simple breach of contract. Papoutsakis v. Bank of Am., No. 10-CV-2147, 2011 WL 221703, at *4 (D.N.J. Jan. 20, 2011); see also Cox, 647 A.2d at 462. Accordingly, Plaintiffs' claim under the CFA is dismissed.

     E. Injunctive Relief

        Plaintiffs also seek a permanent injunction that would prohibit Cablevision "from ignoring its contractual deadlines with content providers" and compel it to "enter into a dispute resolution mechanism" to resolve disagreements with its content providers.   (CAC ¶ 97.)   Cablevision's brief sets forth a host of reasons why an injunction would be inappropriate in this case (Def. Br. 23-25); suffice to say here that Plaintiffs have an adequate remedy at law for alleged past contract breaches and that a request to enjoin future breaches is "nothing more than unripe speculation." Advanced Global Tech., LLC v. XM Satellite

---

[4] As with Plaintiffs' claims under New York law, the Court need not decide whether Federal Rule 8 or 9 applies to Plaintiffs' New Jersey consumer protection claims.   Because Plaintiffs make no attempt whatsoever to allege intent, the allegations would fail to state a claim under either standard.

Radio, Inc., No. 07-CV-3654, 2007 WL 3196208, at *3 (S.D.N.Y. 2007). Accordingly, Plaintiffs' request for an injunction is dismissed.

CONCLUSION

For the foregoing reasons, Cablevision's motion to dismiss the CAC is GRANTED IN PART AND DENIED IN PART. Plaintiffs' breach of contract claim survives and the rest of their claims are dismissed. Plaintiffs may file a second consolidated amended complaint consistent with this Memorandum & Order within twenty-one (21) days.

Further, and pursuant to the Court's February 1, 2011 Memorandum & Order consolidating the Cablevision cases (Docket Entry 25), a related case, Siegel v. Cablevision Systems Corp., No. 11-CV-0394 (E.D.N.Y.), shall be consolidated with this action (see Docket Entry 25 at 3 n.1). The Clerk of the Court is respectfully directed to docket this order on the Consolidated Docket and on Docket No. 11-CV-0394.

SO ORDERED.

/s/ JOANNA SEYBERT
Joanna Seybert, U.S.D.J.

Dated:    March  28 , 2012
          Central Islip, New York

23